## STATEMENT OF FACTS

The below signed affiant is a Criminal Investigator with the District of Columbia (D.C) Department of Corrections (DOC).

I am a Criminal Investigator, classified under the Federal Office of Personnel Management (OPM) Job Series 1811, of D.C. DOC, since April of 2023. Your affiant is currently assigned to the Office of Investigative Services (OIS) of the DOC. The OIS conducts Criminal Investigations of violations of the D.C. Criminal Code, as well as the Federal Code by DOC inmates, staff, volunteers, and contractors. The OIS also serves as the liaison with Federal, State, County, and Local Law Enforcement agencies, when Criminal misconduct is identified. OIS also gathers intelligence concerning local, regional and national gang networks, through our Gang Intelligence Unit (GIU). OIS maintains a register of both associates and gang members in the custody of DOC.

Prior to your affiant's employment with the D.C. DOC, I was also a certified Police Officer/Criminal Investigator in the State of Maryland, from 2005 through 2013. Your affiant has also been a certified Police Officer/Criminal Investigator in the D.C. - Washington D.C., from 2013 through the present time. Your affiant has been involved in the arrest of more than five hundred (500) individuals for multiple offense(s) of but not limited to narcotics (controlled dangerous substances) possession and possession with the intent to distribute, conspiracy, robbery, assaults, firearms violations, and stolen vehicle incidents, among others; It should also be noted that this list is not an all-encompassing list of your affiant's training, knowledge and/or experience, but is only meant to show your affiant's experience as a Law Enforcement Professional.

Your affiant has also attended the Prince Georges County Municipal Police Training Academy for training in street level Law Enforcement, as well as conducting Criminal Investigations. Your affiant has also received additional Academy, as well as In-Service Training on the Identification, Investigation, Field-Testing, and Seizure of narcotics (controlled dangerous substances). Your affiant also attended D.C. Code Training Classes within the District of Columbia, during my transfer as a Law Enforcement Officer in the State of Maryland to D.C.

Based on your affiant's training, knowledge and experience about suspects whom commit crimes, or otherwise known to be involved with and/or conspire to commit these crimes; these suspects are known to maintain either tools and/or fruits of their specific crimes. Furthermore, your affiant knows from experience that these tools or fruits of crimes could include anything in relation to the specific crime being committed (for example: drugs, narcotics, controlled dangerous substance(s), paraphernalia, drug related contraband, firearms, burglary tools, ledgers, cell phones, computer equipment, money/currency, stolen items, etc.) which are usually kept and stored with other related items in their home, vehicle(s), or place of employment. As a Law Enforcement Professional, your affiant has become familiar with the habits and practices of criminals who possess or use items taken from these various crimes. Persons, who commit these crimes, often keep and store items and all related accessories, within their premises and places where they live or otherwise known to reside. Your affiant also knows from previous experience that it is common for perpetrators to store stolen property in their residences, other places they are known to reside, vehicles, or other known related locations until they can convert that property to cash by selling or

1

pawning the specific property to a business or any other known or unknown individual(s). Your affiant has also had cases in which suspects have retained tools, fruits and/or even stolen pieces of property indefinitely for their own use and/or to even sell for personal gain. Your affiant is also aware that these perpetrators also may exchange United States currency, gained from the commission of these Crimes, and/or utilize mobile banking applications to exchange currency between all parties involved, as well as to retain money (monetary balances) for the perpetrator themselves. Lastly, your affiant is aware that perpetrators and their accomplices will at times exchange communication through electronic means, be it computer, cell phones, social media platforms, etc.

### Investigation

As detailed below, this investigation involves the introduction of alleged fentanyl into the Washington D.C. Jail on April 23, 2025. The subjects of the investigation are Tommy WHACK ██████████████████████████ and Carolyn BELL ██████████████████ (collectively the "SUSPECTS").

In D.C. Superior Court case number 2024 CF1 010033, WHACK is currently charged by complaint with Felony Murder While Armed. He has been detained at the D.C. Jail in that case since October 5, 2024. In April of 2025, WHACK was housed at the Correctional Treatment Facility, Cell #32 within the C2A male housing unit.

On April 21, 2025, your affiant learned that WHACK was potentially involved in the distribution of dangerous narcotics within the C2A male housing unit. Your affiant learned that WHACK apparently received fentanyl pills through his weekly face-to-face visits, including during his most recent visit on Wednesday, April 16, 2025, which was scheduled from 1:30 p.m. to 2:30 p.m., and that WHACK intended to introduce more fentanyl pills into the D.C. Jail during his upcoming April 23, 2025 weekly visit. Your affiant knows through his experience investigating offenses at the D.C. Jail that inmates have historically been successful in introducing contraband into the D.C. Jail through face-to-face visits. In review of the visitor logs, your affiant discovered that BELL and Danita COOK (S-1) visited WHACK on April 16, 2025.

Through review of WHACK's phone, text, and tablet video visit communications records from the D.C. Jail, your affiant discovered that WHACK exchanged money through mobile banking applications like Apple Pay or CashApp with BELL and S-1, and that WHACK's CashApp handle was ████████████████. Your affiant is aware that inmates regularly transfer money through mobile banking applications to buy or sell contraband.

### The April 16, 2025 Visit

Through WHACK's communication records, your affiant discovered the telephones numbers BELL and S-1 used to communicate with WHACK. At times, WHACK would call S-1, and request that S-1 call "Carolyn" (BELL). S-1 would then call BELL and connect the call to WHACK through three-way teleconferencing. During these communications, WHACK and BELL would use certain terminology that is known to your affiant to be used by inmates at the D.C. Jail to refer to introducing unlawful contraband into the D.C. Jail, including the following:

- On April 15, 2025, at approximately 10:57 a.m., WHACK sent a text message to BELL stating "don't forget to set the visit up[.]"

- On April 15, 2025, at approximately 2:54 p.m., WHACK and BELL connected to a video visit through the tablet issued to WHACK. The two discussed WHACK's plan to sell the items BELL had for "$25 each."

- On April 15, 2025, at approximately 8:32 p.m., WHACK called BELL and discussed picking up a package from someone near Saratoga and/or having this unknown person drop the package off to BELL before WHACK and BELL's April 16, 2025 face-to-face visit.

- On April 16, 2025, at approximately 9:29 a.m. (the date WHACK and BELL met for a face-to-face visit), WHACK called BELL and asked BELL "did you get that?"

Your affiant reviewed surveillance footage from the April 16, 2025 face-to-face visit. On that day, at approximately 1:30 p.m., WHACK met with BELL and S-1.

In the screenshot below, WHACK is wearing his DOC-issued orange clothing with white shoes; BELL is wearing a red/pink t-shirt with black pants and black shoes; and S-1 is wearing a green shirt with the word "PINK" in block white letters, green pants, and black/white shoes. As depicted below, at approximately 2:24 p.m., BELL appears to unbuckle and unzip her pants with her right hand.



**Figure 1**

Within seconds, BELL appears to reach her right hand into her now unbuckled and unzipped pants.



**Figure 2**

Seconds later, BELL appears to remove her hand from her pants, while concealing her hand from view in between her legs.



**Figure 3**

At approximately 2:30 p.m., BELL approaches WHACK and embraces him. During the embrace, BELL appears to place something in WHACK's upper left chest shirt pocket.



**Figure 4**

At approximately 2:31 p.m., WHACK appears to reach into his shirt pocket with his right hand, and remove the object BELL placed in his pocket.



**Figure 5**

At approximately 2:32 p.m., at the conclusion of the face-to-face visit with BELL and S-1, as WHACK walked away, he appears to be holding an object in his hand with a clenched fist. WHACK was then escorted back to the C2A male housing unit.



**Figure 6**

<u>***The April 23, 2025 Visit***</u>

After reviewing the surveillance footage from the April 16, 2025 face-to-face visit, your affiant monitored communications recorded at the D.C. Jail involving WHACK, BELL, and S-1, and discovered the following communications:

- On April 22, 2025, at approximately 12:23 p.m., WHACK called BELL and discussed BELL scheduling their weekly visit.

-  On April 22, 2025, at approximately 2:12 p.m., WHACK called S-1, who conferenced-in BELL to discuss their weekly visit. During this call, WHACK and BELL discussed their visit scheduled for April 23, 2025, at approximately 6:30 p.m.

- On April 22, 2025, at approximately 10:02 p.m., WHACK sent BELL a text

message warning BELL "not to let the kids get anywhere near them they dangerous."

WHACK and BELL scheduled a face-to-face visit for April 23, 2025, at 6:30 p.m. Before the visit, your affiant set-up an Interdiction Response Team, who were prepared to respond in the event BELL transferred any contraband to WHACK during the April 23, 2025 visit.

During the April 23, 2025 visit, WHACK wore his DOC-issued orange clothing with white shoes, and BELL wore a black shirt, black pants, and black/white shoes. Accompanying BELL to the visit were WHACK and BELL's two juvenile children.



**Figure 7**

During the April 23, 2025 visit, your affiant watched the surveillance footage in real-time, which showed the following.

At approximately 6:30 p.m., after BELL was seen putting her hand down her pants, BELL embraces WHACK and appears to place an item in WHACK's pocket.



**Figure 8**

At approximately 6:33 p.m., after removing an item from his shirt pocket, WHACK appears to place his hands down his pants.



**Figure 9**

### *Interdiction*

While observing the surveillance footage from the April 23, 2025 visit in real-time, your affiant relayed the activity described above to the Interdiction Response Team. After the surveillance footage showed what appeared to be BELL placing an item into WHACK's shirt, your affiant instructed the Interdiction Response Team to end WHACK and BELL's face-to-face visit, and search WHACK under DOC policies and procedures.

On April 23, 2025, at approximately 8:36 p.m., the Interdiction Response Team removed WHACK from the visiting area and took him to a separate area to be searched. After WHACK removed his DOC-issued shirt, pants, and shoes, the Interdiction Response Team observed a bulge in WHACK's left hip area, inside WHACK's boxers.

WHACK asked the Interdiction Response Team "why are y'all doing this," and began actively resisting. The Interdiction Response Team tried to restrain WHACK, during which

WHACK fell to the ground and threw an object from his underwear across the room. That object was recovered and contained 296 round blue pills stamped with the inscription "M-30," as depicted below.



**Figure 10**

Based on your affiant's narcotics investigation training, and experience recovering or investigating thousands of blue pills marked "M-30," your affiant knew this kind of pill to contain fentanyl.

Based on WHACK's April 15, 2025 video visit with BELL in which he indicated he intended to sell the items he received from BELL for $25, the 296 pills have an estimated value of approximately $7,400.

Based on the above information there is probable cause to believe that on April 23, 2025, within the District of Columbia, Tommy WHACK committed the following offenses:

- Possessing Contraband in Prison, in violation of Title 18, United States Code, Section 1791(a)(2) and (b)(1); and
- Unlawful Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

Respectfully submitted,



Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 27, 2025.

_____
HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE